# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA, *ex rel.*
WILLIAM GATES, *et al.*

    Relators

             vs.

AUSTAL USA, LLC

    Defendant

Civil Action No.: 1:14-cv-00261-CG-M

## MEMORANDUM BRIEF IN SUPPORT OF AUSTAL'S MOTION TO DISMISS FOR FAILURE TO PLEAD FRAUD WITH SPECIFICITY, FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, DEFECTIVE SERVICE OF PROCESS

## INTRODUCTION

Defendant, Austal USA, LLC ("Austal") respectfully submits this Memorandum Brief in support of its Motion To Dismiss the June 9, 2014, False Claims Act Complaint (Dkt No. 1) filed by Plaintiffs/Relators (hereinafter referred to individually as "Relator") and/or to Motion To Quash Relators' defective service of the March 3, 2015, Summons (Dkt Nos. 12) and Complaint pursuant to FRCP 9(b), 12(b)(2), 12(b)(5), and 12(b)(6).

Specifically, Relators' First and Second Claim (Complaint, at ¶¶ 90-94 and 95-99) fail to identify a single claim (false or otherwise) submitted to the Federal government. They do not identify any particular misrepresentations, the time, place

1

or person responsible for submitting any false claims/statement, or the content and manner that any such claims/statement misled the United States or otherwise caused the government to pay or approve such false claims. They should be dismissed due to a failure to plead fraud with particularity under FRCP 9(b).

Relators' First, Second and Third Claims should also be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief may be granted. The Complaint's reliance on speculation without plausible factual assertion(s) that Austal actually submitted a false claim cannot be considered a well pled complaint. Relators' Second Claim (Complaint, at ¶¶ 95-99) fails to allege essential elements to establish liability under 31 U.S.C. §3729(a)(1)(B). Also, Relators' Three, Four, and Five's allegations in the Third Claim (Complaint, at ¶¶ 100-105) fail to describe any "protected conduct" under 31 U.S.C. § 3730(h) that would provide a remedy under the False Claims Act ("FCA"). Their assertions could not reasonably have been believed to involve an effort to stop one (1) or more "false or fraudulent claims" in violation of the FCA.

Finally, Austal moves to dismiss the Complaint and/or quash service pursuant to FRCP 12(b)(2), "lack of personal jurisdiction" and FRCP 12(b)(5), "insufficient service of process." Relators' have failed to properly serve Austal in accordance with FRCP 4(h)(1)(A) and (e)(1). Having failed to effect proper service, Austal is not yet subject to the personal jurisdiction of this Court.

## **FACTUAL & PROCEDURAL BACKGROUND**

Austal is an Alabama Limited Liability Company, and its principal place of business is 1 Dunlap Drive, Mobile, Alabama 36602. Two thousand people work at that facility. *See* Complaint, at ¶ 8.

Relators William Gates (a.k.a. "Relator One"), Clinton Rooftree (*a.k.a.* "Relator Two"), James Trainer (*a.k.a.* "Relator Three"), Tami Andrews (*a.k.a.* "Relator Four"), and Hannah Christopher (*a.k.a.* "Relator Five") filed this lawsuit under seal on June 9, 2014. The Complaint is divided into three (3) Claims. The First Claim alleges violations of 31 U.S.C. § 3729(a)(1)(A) by asserting that Austal submitted various unspecified claims to the United States government, via either the U.S. Navy or the U.S. Army, which "purposefully incorrectly stated that employees' work was performed under a higher-paying job classification or that employees' work was performed on a different vessel." *See* Complaint, at ¶ 93. The Second Claim alleges that Austal knowingly, or acting with deliberate ignorance and/or reckless disregard for the truth, made, used, or caused to be made or used false records and/or statements material to false or fraudulent claims in connection with construction of vessels for the U.S. Navy and the U.S. Army, and that the United States paid Austal "in excess of what was properly due based on Defendant's wrongful conduct." *See* Complaint, at ¶ 98. The Third Claim, filed

only by Relators Three, Four and Five, alleges that Austal retaliated against them by either terminating or compelling them to resign after they reported one of their supervisors who allegedly directed them to enter false data into Austal's Labor Metrics system, on which the Relators claim the Navy relied to award and/or maintain Austal's contracts.

According to the Court's electronic filing system, on June 27, 2014, shortly after the Complaint was docketed, all claims filed by Ms. Christopher (Relator Five) appear to have been dismissed by the Court. *See* Dkt. No. 3 "Notice of Voluntary Dismissal of all claims by Hannah Christopher."[1] Thereafter, on February 27, 2015, the United States declined to intervene with regard to any of Plaintiff's substantive FCA allegations. (Dkt. No. 9). The Complaint was unsealed on March 2, 2014, and, on March 3, 2015, a Summons was issued by the Clerk of the Court. (Dkt. Nos. 10 and 12).

On March 9, 2012, Plaintiff attempted to serve Austal a copy of the Summons and Complaint via certified mail. However, the envelope containing these documents was simply addressed to "Austal USA, LLC, 1 Dunlap Drive, Mobile, Alabama 36602." That service did not identify any officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process on behalf of Austal. *See* Dkt No. 13, at 2.

---

[1] Until Ms. Christopher's status can be confirmed, for purposes of this Motion, Austal will continue to treat Ms. Christopher/Relator Five as if she were still a participant in this litigation.

## DISCUSSION

### I. Relators' First & Second Claims Should Be Dismissed Under FRCP 9(b) Because They Fail To Allege Fraud With Particularity Or Identify A Single False/Fraudulent Claim Submitted By Defendant To The United States Government.

*Federal Rule of Civil Procedure* 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FRCP 9(b). The particularity requirements of Rule 9(b) serves several important purposes in fraud actions by alerting defendants to the "'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Durham v. Business Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 971 (3d Cir. 1984)); United States *ex rel*. Atkins v. McInteer, 470 F.3d 1350, 1358 (11th Cir. 2006); Elster v. Alexander, 75 F.R.D. 458, 461 (N.D. Ga.1977). Despite this, Relators have failed to plead "with particularity the circumstances constituting [the alleged] fraud" in the First or Second Claims of the Complaint as required by FRCP 9(b). Those Claims should be dismissed by the Court.

Failure to satisfy Rule 9(b) is more than a technical defense; it goes to the heart of the substance of this case. This is so because the Relators' allegations are so self-contradictory and flawed that no comprehensible claim has been stated. For instance, paragraph 84 of the Complaint states the "Navy agrees to pay a specified

amount for each ship that it builds with little to no room for cost overruns," but then Relators attempt to describe a fanciful scheme to suggest Austal's payment is obtained by submitting its employees' time sheets (paragraphs 50-73) through Labor Metrics for payment by the Navy[2]. The allegations in paragraph 84, while being inartfully drawn, are closer to being accurate as Austal's contracts with the Navy are most closely described as fixed price contracts, on which progress payments are based on the percentage of physical completion of each vessel.[3] Perhaps it is the Relators' misdescription of how Austal bills and is paid for its efforts under both the JHSV and LCS programs, coupled with the dubious nature of the allegations given the close and continuous monitoring of Austal's performance by numerous Navy, Defense Contract Audit Agency ("DCAA") and Defense Contract Management Agency ("DCMA") technical and administrative personnel, that led to the United States' decision to not join this lawsuit after its investigation of the Relators' spurious allegations.

Although Rule 9(b) is not intended to abrogate the notice pleadings standards under FRCP 8, or supplant the Supreme Court's "plausibility"

---

[2] Although irrelevant at this stage of the pleadings, there is no "Labor Metrics" billing software as alleged by Relators. There is a software program in use called "Labor Metrix" that serves the much different purpose of tracking efficiency of work by hours spent on various tasks. *See* www.labormetrixwebsite.com.

[3] In fact, 10 U.S.C. § 2306(a) and 48 C.F.R. § 16.102(c) expressly prohibits the Federal government, or for that matter any contractor, from entering into the type of cost-plus-percentage of contracts which Relators seem to vaguely describe throughout their Complaint.

requirements under <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937 (2009) and

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 130 S.Ct. 1662 (2007), "Rule 9(b)

is satisfied [only] if the complaint sets forth '(1) precisely what statements were

made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for

making (or, in the case of omissions, not making) same, and (3) the content of such

statements and the manner in which they misled the plaintiff, and (4) what the

defendants obtained as a consequence of the fraud.'" <u>Tello v. Dean Witter</u>

<u>Reynolds, Inc.</u>, 494 F.3d 956, 972 (11th Cir. 2007) *(*quoting <u>Ziemba v. Cascade</u>

<u>Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also* <u>American Dental Assn.</u>

<u>v. Cigna Corp.</u>, 605 F.3d 1283, 1291 (11th Cir. 2010) ( "[w]e have held that

pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements,

documents, or misrepresentations made; (2) the time, place and person responsible

for the statement; (3) the content and manner in which these statements misled the

Plaintiffs; and (4) what the defendants gained by the alleged fraud.").

Rule 9(b)'s heightened pleading standard is applicable to actions filed under

the FCA. <u>United States *ex rel.* Clausen v. Lab. Corp. of Am., Inc.</u>, 290 F.3d 1301,

1309-1310 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); <u>Hopper v. Solvay</u>

<u>Pharmaceuticals, Inc.</u>, 588 F.3d 1318, 1324 (11th Cir. 2009), *cert. denied*, 561 U.S.

1006 (2010). Thus, FRCP 9(b) requires that an FCA Complaint set forth "'facts as

to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.'" Clausen, 290 F.3d at 1310. This applies to both the details of the false claim and the presentment of that claim to the government for payment. Without such particularity, a relator's Complaint lacks the "indicia of reliability" necessary under Rule 9(b) to support his or her conclusory allegations of wrongdoing. *Id.,* at 1311-12.

This is true for FCA actions based on alleged violations of 31 U.S.C. § 3729(a)(1)(A), like Relators' First Clam. Subsection 3729(a)(1) contains an express presentment requirement. Submission of such false claims is, in fact, the "*sine qua non* of any alleged False Claims Act violation," and, thus, Rule 9(b)'s heightened pleading standard requires dismissal of an FCA complaint **unless**, the complaint identifies, with particularity, at least one claim for payment that, if submitted to the Federal government, is necessarily false. *Id.* at 1310–12 (internal citations omitted). This is equally true for alleged fraudulent conduct under 31 U.S.C. § 3729(a)(1)(B), like Relators' Second Claim. Under Subsection 3729(a)(2), a relator under the FCA must plead, with particularity, the facts surrounding his or her assertion that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government, <u>and</u>, more importantly, (2) that the defendant's false record or

statement caused the government to actually pay or approve a false claim,[4] either to the defendant itself, or to a third party. *See* Hopper, 588 F.3d at 1327.

Rule 9(b) does not permit an FCA plaintiff/relator to merely describe a private scheme in detail but then allege simply and without any stated reason for his/her belief that claims requesting illegal payments must have been submitted, were likely submitted, or should have been submitted to the government. McInteer, 470 F.3d at 1359; *see also* United States *ex rel.* Nathan v. Takeda Pharms., 707 F.3d 451, 457 (4th Cir. 2013), *cert. denied*, 134 S.Ct. 1759 (2014); United States *ex rel.* Ge v. Takeda Pharm. Co., 737 F.3d 116, 124 (1st Cir. 2013), *cert. denied*, 135 S.Ct. 53 (2014). A Complaint that fails to allege facts, with particularity, both that a defendant intended false statements to influence the government's decision to pay or approve a specific false claim, or to specify not only how, but also when such false claims were paid/approved must be dismissed as failing to plead fraud with particularity under FRCP 9(b). Clausen, 290 F.3d at 1331; *see also* United States *ex rel.* Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1317, 1334 (N.D. Ga. 2013);

Despite this, Relators' Complaint fails to allege, with any particularity, if – or when – **any** fraudulent/false claims for payment or approval were ever

---

[4] A "claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that is presented to an officer, employee, or agent of the United States. 31 U.S.C. § 3729(b)(2)(A)(i).

submitted to the United States. It fails to provide any particulars regarding if/how Austal used the alleged falsified records in connection with any specific false or fraudulent claim paid or approved by the United States. In none of Relators' descriptions of Austal's alleged misconduct have Relators provided any information/assertions as to when such "false or fraudulent claims" may have been submitted, to whom any such claims may have been submitted, who at Austal submitted or caused them to be submitted, how any such claims for payment were false or, for that matter how or when the United States allegedly paid Austal or approved such false claims based on any of the alleged "false" records to which Relators point in their Complaint.

Instead, Relators' case turns on nothing more than "information and belief." *See* Complaint, at ¶¶ 28, 33, 86, 87, and 88.[5] Such generalizations fall short of the specificity requirements of FRCP 9(b). *See* Corsello v. Lincare, Inc., 428 F.3d 1008 (11th Cir. 2005), *cert. denied*, 549 U.S. 810 (2006); *see also* Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 684 (7th Cir. 1992). Simply put, Relators' assertions here in support of the First and Second Claims fail to specify the "who," "what," "where," "when," and "how" of any false/fraudulent

---

[5] Relators' claim that Austal submitted false data to the government "for the purpose of winning and maintaining contracts for the construction of marine vessels" (*see* Complaint at ¶¶ 28, 87, 88) is not even a "claim" for payment or property as defined by 31 U.S.C. § 3729(b)(2)(A). As discussed below, the Navy's evaluation of Austal's performance, evaluation of bids for future, and/or the Navy's decisions to rescind, seek damages for breach of contract, or deny of further contracts to Austal has **nothing** to do with an actual claim for money or property. Nor does do these allegations involve reliance by the government to pay or approve any such claims.

submissions to the government or how Austal used the subject records to otherwise get such "false or fraudulent claims" paid or approved. Instead, Relators' Complaint only speaks in terms of generalities and speculative conclusions. *See* Complaint, at ¶¶ 28, 45, 46, 49, 63, 85.

Again and again, Relators rely on generalities to claim that they have witnessed, and otherwise have knowledge of Defendant falsifying data "on numerous occasions" involving "multiple employees," and by "numerous methods" without providing any specifics of the alleged fraud. *See* Complaint, at ¶¶ 30, 31, 32, 42, 51, 53, 61. Who these unnamed employees were, what vessels/contracts might have been involved, what materials may have been involved, when these allegedly "numerous" occurrences took place, how the data entered into Austal's system was or was not false, or even how any of this allegedly false data ended up supporting a particular Austal claim for payment/approval or was used by Austal in support of such claims cannot be found anywhere in the Complaint. Ultimately, none of these assertions regarding what they claim to have "witnessed," "observed" or otherwise "know" matter. It does not come anywhere close to the standards required by FRCP 9(b).

Even in the few instances in which the Complaint attempts to make a more definitive assertion regarding Austal's billings beyond simply "information and belief," Relators fail to identify a single "false or fraudulent claim" for

payment/property has actually been submitted to the United States. This is particularly troubling with regard to Relator Two, a self-described Class-A welder. *See* Complaint, at ¶ 4. Relator Two asserts that he "knows that his time was billed to the U.S. Navy as that of a Supervisor." *See* Complaint, at ¶ 4, 37. How a welder could "know" about Austal's billings is incredulous, but if he really does "know" that his time was billed as a Supervisor, Rule 9(b) requires that he plead the specific facts of such fraudulent billings. He has not.

This is also true with regard to Relator One, a former "supervisor in Final Assembly," who claims to have "witnessed" or "otherwise" have knowledge of employee time being incorrectly billed. *See* Complaint, at ¶¶ 53, 59. Again, how a supervisor in Final Assembly could have witnessed or otherwise know about Austal's billings is implausible, but if he did, Rule 9(b) would require that the Complaint specify the "who," "what," "where," "when," and "how" such fraudulent submissions were made.[6] *See, e.g.,* <u>Barys *ex rel*. U.S. v. Vitas Healthcare Corp.</u>, 298 F. App'x 893, 897 (11th Cir. 2008); <u>Klusmeier v. Bell Constructors, Inc.</u>, 469 F. App'x 718, 721-722 (11th Cir. 2012).

---

[6] Paragraph 51 of the Complaint, in which Relators One and Two both claim to have "personal knowledge" of employees' work being "intentionally billed to the wrong ship," suffers from the same lack of particularity or indicia of reliability. *See* Complaint, at ¶ 51. Relators failed to identify any such employee, and have not even specified which contracts were involved or which JHSV or LCS vessels were allegedly affected.

To make matters worse, a number of operative paragraphs of the Complaint (Paragraphs 28, 41, 42, 45, 46, 49, 50, 52, 62, 84, 63 and 85) are even worded in the present tense. Yet all of the Relators' employment with Austal ended between 2011 and 2013. *See* Complaint, at ¶¶ 3 through 7. None of these paragraphs suggest that any claims were actually submitted during their employment, which begs the question of how they could have any "knowledge" about Austal's practices today much less whether Austal is or is not (1) knowingly making or submitting false timesheets to the government or (2) reallocating resources from one project to another.

Relators' barebones allegations are not plausible. They lack specifics as to "who," "what," "where," "when," and "how" of any false/fraudulent claims. Yet, the Complaint's dearth of support is not limited to a failure to identify any false claim for payment, it lacks specificity regarding how the alleged falsified records were used in support of a "false claim," or details of how the Navy materially relied on them. Relators' Second Claim simply parrots the FCA's language. *See* Complaint, at ¶ 97. Relators then allege that "[t]he United States Government paid Defendant in excess of what was properly due based on Defendant's wrongful conduct." *See* Complaint, at ¶ 98. Yet, nowhere does the Complaint provide any facts to support an assertion that Austal intended such "false statements" to play

any role in the Federal government's decision to pay or approve any a particular "false or fraudulent claim."

Relators' repeated claims "upon information and belief" that Austal knowingly provided the Navy with falsified data entered into Labor Metrics with knowledge that the Navy was "relying on such data to evaluate Defendant's performance under existing contracts and to evaluate the bids of Defendant for subsequent contracts . . . to build future LCSs and JHSVs" (Complaint, at ¶¶ 87-88) and overly simplistic claim "on information and belief" that, "if the U.S. Navy had been made aware of Defendant's fraudulent submission of Labor Metrics data it would have (a) taken legal action to rescind, or seek damages for breach of, existing contracts with Defendant; and (b) denied an award of any further contracts to Defendant," (Complaint, at ¶ 87) fail to even allege a "claim" for money or property as defined by the FCA. Those allegations also lack the requisite nexus to plead the elements of a Subsection 3729(a)(1)(B) FCA violation. *See* Hopper, 588 F.3d at 1330; Mitchell v. Beverly Enterprises, Inc., 248 F. App'x 73 (11th Cir. 2007) (affirming dismissal of a *qui tam* action where the relator pled his "belief" that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the government); *see also* United States *ex rel.* Seal 1 v. Lockheed Martin Corp., 429 F. App'x 818, 820 (11th Cir. 2011).

Appending to the Complaint a few Exhibits of alleged worker misclassifications, time and materials coding issues within Austal does not excuse the Relators' failure to plead these matters with specificity and do not substitute for Rule 9(b)'s requirements that the Complaint identify "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" <u>Tello</u>, 494 F.3d at 972.

If anything Relators' "Exhibits" are equally devoid of particulars. In fact, none of the Exhibits suggest knowing mischarging. To the contrary, in several cases, Relators' Exhibits contradict their claims of false or fraudulent billing/recordkeeping – further calling into question the reliability or plausibility of their allegations. Courts will not accept conclusory allegations where the allegations do not reasonably follow from a pleader's description of what allegedly happened, or where these allegations are contradicted by the pleader's descriptions themselves. <u>Saldivar</u>, 972 F. Supp. 2d at 1328 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* 1357 (3d ed. 2002)).

With regard to Relator Two's claim regarding his April 2013 timesheet (*see* Complaint, at ¶ 40 and Exhibits 1 and 2), **<u>nothing</u>** in the Exhibits or Complaint suggest that that particular timesheet was ever submitted to the government, or that it was in any way used to support a claim for payment from the United States. Nothing identifies when such bill(s) may have taken place. Instead, Exhibit 2 shows that Relator Two was given a chance to review that timesheet and marked out the section(s) indicating that he was working in a Supervisory position. That alone belies Relator Two's assertion that his time was improperly billed to the Federal government.

The same is true for Relator One's Exhibit 3, on which he relies to suggest that "several employees" during the week of July 21, 2013, were billed to a task that should have been billed to overhead or where "time spent on drawing modules was allocated to task when that time should have been billed to overhead." *See* Complaint, at ¶¶ 54-55. Once again, the Complaint is devoid of specific factual support pointing to a false or fraudulent invoice in which that data was transmitted to the Navy, or facts showing how Austal even used this data in order to have a false claim paid or approved. Once again, Exhibit 3 contradicts the allegations in Paragraphs 54 and 55. Exhibit 3 shows instead that Austal was asking Relator One to explain why he charged his employees to overhead. Yet, contrary to Relator One's assertion, the **<u>only</u>** change requested by Ms. Lai was that 17 hours of

overtime recorded by Mr. Vo be transferred from overhead to "the correct charge code." *See* Complaint, Exhibit 3, at 3. It says **<u>nothing</u>** about reclassifying any of the employees' two (2) hours of time that Relator One recorded as overhead, to any other charge code.

With regard to Exhibit No. 4 although Relator One claims that it shows that he was instructed to stop billing to work performed during "Final Assembly" of the Modular Manufacturing Facility ("MMF") and bill his time to "rework," that email makes no mention of such alleged events. It simply tells people to stop booking to closed out work packs, to bill activities requiring rework to rework codes, and to submit the necessary paperwork to establish new codes and schedule such work. *See* Complaint, Exhibit 4. That is not improper. Exhibit 4 says nothing about instructing Relator One to charge for work still being performed under the MMF to the Final Assembly ("FA"). It certainly does not support the claim that "[t]hough the U.S. Navy was informed that the work assigned to MMF was completed before it was moved to Final Assembly and compensated Defendant accordingly, the work was actually not completed before leaving the MMF stage of production." *See* Complaint, at ¶ 59. Exhibit 4 provides no support for such allegations.

Finally, Exhibit 5, a July 2013 email concerning the use of "strong backs,"[7] does not come close to meeting the heightened pleading standards for fraud under Rule 9(b). Noting in Relators' First Claim even alleges that Austal submitted false or fraudulent claims for payment or approval for materials used on different vessels. *See* Complaint, at 93. While Relator One generally alleges that this was improper (*see* Complaint at ¶ 61), Paragraph 50 of the Complaint directly contradicts that assertion by acknowledging that "is not uncommon for employees and materials to be used on multiple vessels in the same pay period" and, more importantly, "[t]his is not improper or illegal as long as the employees' time or the materials are billed accordingly." *See* Complaint, at ¶ 50. Without providing any factual support, Relator One simply claims that that did not occur. Yet, nothing in Exhibit 5 remotely suggests this. Nor does Relator One explain how the temporary use of a strong back as a fit hold during the welding process that does not even become a part of that hull or vessel's superstructure could ever constitute a case for material mischarging.

Ultimately, nothing in Relators' litany of assertions regarding violations of the FCA meets the requisite "indicia of reliability" for pleading fraud with

---

[7] A "strong back" is a piece of scrap aluminum and is used as a "fit hold" during the welding process. It is used to stabilize two (2) pieces of metal them so that they do not move/shift positions while being welded. Strong backs can be reused four (4) to six (6) times before they are unusable; they do not become a permanent fixture to the vessel/hull and are removed once a weld is complete. Nor are they not chargeable to any hull/vessel; they are made of scrap that would otherwise be thrown away.

particularity as required by Rule 9(b). The First and Second Claims of the Complaint should be dismissed.

### II. Relators' Claims Should Be Dismissed Under FRCP 12(b)(6) Because the Complaint Fails to State A Basis Upon Which Relief May Be Granted.

To withstand a Rule l2(b)(6) motion to dismiss, a *qui tam* relator must aver a sufficient set of "plausible" facts to establish, among other things, that some violation of the Act occurred or, in the context of a retaliation claim, that he or she engaged in "protected conduct" under the FCA.

The First and Second Claim of Relators' Complaint fail to state a plausible claim upon which relief may be granted and should be dismissed pursuant to FRCP 12(b)(6). As the Eleventh Circuit stated in <u>Clausen</u>, "without such plausible allegations of presentment, a relator not only fails to meet the particularity requirement of Rule 9(b), but also does not satisfy the general plausibility standard of <u>Iqbal</u>*." See* <u>Clausen</u>*,* 290 F.3d at 1313 ("[i]f Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion."). When one further considers that the few Exhibits to which Relators' point as evidence actually contradicts their more generic assertions, Relators' have completely failed to state a plausible claim upon which relief can be granted.

This is particularly evident under the Second Claim, which simply parrots the statutory language that "Defendant knowingly, or acting with deliberate ignorance and/or reckless disregard for the truth, made, used, or caused to be made or used, false records and/or statements material to false claims or fraudulent claims in connection with the construction of vessels for the U.S. Navy and the U.S. Army." *See* Complaint, at ¶ 97. Yet, there is no reference to a claim for payment or approval in this Paragraph. Instead, Relators only assert that "[t]he United States Government paid Defendant in excess of what was properly due based on Defendant's wrongful conduct." *See* Complaint, at ¶ 98. This is not the standard by which liability attaches under Subsection 3729(a)(1)(B). Nothing in Paragraphs 97 or 98 links any alleged "overpayment" to a false or fraudulent claim or, for that matter, any alleged false or fraudulent records created or used in support of such claims. The elements to support "materiality" or the government's reliance on any such records for payment/approval of such "claims" as defined by 31 U.S.C. §§ 3729(b)(2) and (4) are completely missing. Having failed to plead this important nexus, Relators' Complaint fails state a basis upon which relief can be granted under Subsection 3729(a)(1)(B) of the FCA. It should be dismissed under Rule 12(b)(6).

Relators Three, Four and Five's retaliation claims under 31 U.S.C. § 3730(h) (Relators' Third Claim) must also be dismissed pursuant to Rule 12(b)(6)

because they too fail to meet the minimum pleading standards required by that Rule. Subsection 3730(h) of the FCA provides relief to any employee, contractor, or agent to make that person or entity whole if they have been discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment because of unlawful acts done by the employer, contractor, agency or associated others "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730 (h).

To plead a viable Subsection 3730(h) retaliation suit, a relator must satisfy three (3) elements. The relator must have been engaged in a "protected conduct." Next, the employer must have had knowledge of the relator's "protected conduct" and had either explicit or implicit notice that its alleged activity could result in an FCA complaint being filed. Finally, the relator must establish that the discrimination that he or she suffered was caused as a result of the "protected conduct;" *i.e.*, the employer action was at least, in part, motivated by the employee engaging in such protected conduct. The threshold requirement that any action under Subsection 3730(h) must satisfy is to demonstrate that the plaintiff's activity was in furtherance of "protected conduct" set forth in Section 3730(h). <u>Mack v. Augusta-Richmond County, Ga.</u>, 148 F. App'x 894, 896-97 (11th Cir. 2005). Unless a complaint makes at least a *prima facie* showing of some "protected

conduct" in which a relator engaged, the complaint cannot be considered well pled and must be dismissed under FRCP 12(b)(6).

The concept of "protected conduct" requires that the employee's internal report of suspected wrongdoing "specifically allege fraudulent claims for federal funds and not merely focus on concerns about general misconduct that is not actionable under the FCA. Hammack v. Automated Information Mgmt., Inc., 981 F. Supp. 993, 995-96 (N.D. Tex. 1997); United States *ex rel*. Patton v. Shaw Servs., LLC., 418 F. App'x 366, 372 (5th Cir. 2011). Additionally, the employee's actions must be "sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a qui tam action by the employee." United States *ex rel.* Sanchez v. Lymphatx, 596 F.3d 1300, 1304 (11th Cir.2010) (citing Mann v. Olsten Certified Healthcare Corp., 49 F. Supp. 2d 1307, 1314 (M.D. Ala.1999)). Simply raising concerns about possible non-compliances with a contract, without more, cannot form the basis of protected activities cognizable under the FCA's anti-retaliation provisions. Young v. CHS Middle East, LLC, 2013 WL 4498680, at *7 (E.D. Va. Aug. 20, 2013). *See also* United States *ex rel.* Howard v. USA Envtl., *Inc.,* 2009 WL 113444, *6 (M.D. Fla. Jan. 19, 2009), *aff'd*, 363 F. App'x 737 (11th Cir. 2010).

Yet, Relators Three, Four, and Relator Five's Complaint does not identify that they participated in an effort to "stop 1 or more violations of the False Claims

Act," the type of "protected conduct" under the Subsection 3730(h) that would afford them relief under the Act. None of the Relators have alleged how Defendant's alleged retaliation was even linked to such "protected conduct." Instead, while Paragraph 102 parrots the FCA's language that the Relators were "engaged to stop 1 or more violations of the False Claims Act," an examination of what acts those reports were allegedly designed to stop have **nothing** to do with possible violations of that Act.

Instead, Relators allege that Mr. Williams' false statements were used by the Navy to "award and maintain contracts with Defendant for the construction of marine vessels." *See* Complaint, at ¶ 102. Neither of these alleged events involve the submission of a "claim," the creation/use of records in support of a "claim" (false or otherwise), or the government's material reliance thereon to pay or approve such claim(s) as defined by 31 U.S.C. § 3729(b)(2).[8]

---

[8] Relators Three, Four and Five simply assert that (1) "[u]pon information and belief," Austal knowingly provided the Navy falsified data entered into Labor Metrics with knowledge that the Navy was relying on it to evaluate Austal's performance under existing contracts and Austal's bids for subsequent contracts to build future LCSs and JHSVs, (2) "[u]pon information and belief," the Navy relied on that data to evaluate Austal's performance under its existing contracts or to evaluate bids for subsequent contracts, and (3) "[u]pon information and belief," the Navy would have either taken legal action to rescind or seek damages for breach of Austal's existing contracts or denied an award of future contracts to Austal. None of those acts in themselves constitute violations of the FCA because none of those acts revolve around the presentment of "claim" or the government's decision to pay or provide property to Austal in response to such "claims" as defined by the FCA

The fact that all of these allegations are prefaced with the phrase "upon information and belief" strongly suggests that they did not know (and still do not know) if Austal was actually engaged in any act in violation of the FCA and, therefore, their report of suspected issues with

A bid/proposal is not a "claim" under the FCA. It does not request or demand payment of money or other property. A bid/proposal is nothing more than an offer to perform a contract for work and labor or supplying materials at a specified price. Dookeran v. Mercy Hosp., 281 F.3d 105, 109 (3rd Cir. 2002). It creates no rights to either party until a contract comes into existence and cannot give rise to any right to make a demand for payment of either money or property. Thus, in Mann v. Heckler & Koch, Defense, Inc., 630 F.3d 338 (4th Cir. 2010), the Fourth Circuit held that the employee's opposition to, and investigation of, his employer's conduct surrounding a government bid submission and the employee's subsequent filing of a retaliation claim were **not** protected activities under the FCA's anti-retaliation provisions because the employer's conduct involved "nothing more than non-fraudulent statements made…during the course of a contractual bidding process."

The Navy's decision to "maintain" a contract is also not a "claim" as defined by the FCA. Maintaining a contract, whether it be via an option exercise or other extension of performance, the addition of more deliverables (*i.e.,* additional LCSs and JHSVs), or the evaluation of a contractor's performance is **not** a request or demand for money or property – the "*sine qua non*" of liability under FCA. *See* 31 U.S.C. § 3729(b)(2). Any alleged false records made in support of such actions

---

internal time reporting and their possible effect on bidding and contract maintenance, does not fall within the ambit of Subsection 3730(h).

cannot form a basis for possible liability for a violation of Subsection 3729(a)(1) (Relators' First Claim) or Subsection 3729(a)(2) (Relators' Second Claim). Nor do any of the Navy decisions as to whether to take legal action to rescind or seek damages for breach of Austal's contracts, or to deny to award it with further contracts constitute payments or approvals of a "claim" under Subsection 3729(a)(2).

Ultimately, none of the alleged misconduct or the Navy's alleged reliance on which Relators' Subsection 3730(h) claims are based constitute "1 or more violations of the False Claims Act," Relators' efforts to stop such alleged misconduct could not be in furtherance of stopping such violations, and any issues surrounding Relators' Three, Four, or Five's complaints to Austal regarding Mr. Williams' alleged direction could not represent a "'distinct possibility' at the time of [their] investigation/actions for [his or her] actions to be considered 'protected activity.'" Fanslow v. Chicago Mfg. Ctr., Inc., 384 F.3d 469, 479 (7th Cir. 2004); *see also* Maturi v. McLaughlin Research Corp., 326 F. Supp. 2d 313, 320 (D.R.I. 2004), *aff'd*, 413 F.3d 166 (1st Cir. 2005); Paoli v. Delaware, 2007 WL 4437219, *6 (D. Del. Dec. 18, 2007). Relators' retaliation claim sets forth no viable/plausible grounds for relief under the FCA and, therefore, it should be dismissed. FRCP 12(b)(6).

### III. Relators' Attempted Service Of Process Is Defective Under FRCP 12(b)(5). It is Ineffective & Should Be Quashed.

Beyond the substantive flaws in Relators' Complaint, Austal also moves this Court to quash Relators' counsel's defective service of the Summons and Complaint pursuant to FRCP 12(b)(5). Rule 4(h) of the *Federal Rules of Civil Procedure* provides that a corporation, partnership or other unincorporated association that is subject to suit under a common name, may properly be served with process by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. FRCP 4(h)(1)(B). The Rule also provides that service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FRCP 4(h)(1)(A), (e)(1).

Relators' counsel opted to effect service upon Austal by simply mailing a copy of the Summons and Complaint to Austal via certified mail. Yet, the envelope containing this process was addressed to "Austal USA, LLC" 1 Dunlap Drive, Mobile, Alabama 36602. Counsel's actions did not comply with either the Federal Rules or the Rules of Civil Procedure for the State of Alabama and render the attempted service ineffective. FRCP 4(h)(1)(A) and (e)(1).

While Ala. R. Civ. P. 4(i)(2) permits service of process using certified mail, it also imposes certain duties upon the party seeking to serve another party using

that method. Among other things, Ala. R. Civ. P. 4(i)(2)(ii) requires that, if an attorney or party filing the process and complaint or other document(s) to be served chooses to effect service via certified mail, that attorney/person must address the envelope to the person described in the appropriate subdivision of Ala. R. Civ. P. 4(c). Alabama Rule 4(c), in turn, provides that, service upon a limited liability company, like Austal, must be made upon "an officer, . . . a managing or general agent, or any agent authorized by appointment or by law to receive service of process." Ala. R. Civ. P. 4(c)(6). In spite of this, Relators' counsel's attempted service of the Summons and Complaint was woefully deficient and failed to comply with the requirements of Ala. R. Civ. P. 4(i). Contrary to Ala. R. Civ. P. 4(i)(2)(ii), the envelope in which the Summons and Complaint were mailed to Austal were not addressed to **<u>any</u>** officer, managing or general agency or other agent authorized by law to receive the service of process. The envelope was simply addressed to Austal USA, LLC. *See* Dkt 13, at 2.[9]

By failing to adhere to the requirements of Alabama law and just addressing the envelope to "Austal USA, LLC," Relators' counsel did not effect proper

---

[9] Alabama Rule 4(i)(2)(ii) also provides that, where an attorney or party attempts service of process using certified mail, the return receipt must be addressed to the clerk of the court issuing the process, and, "[u]pon mailing, that attorney/party must immediately file with the court an "Affidavit of Certified Mailing of Process and Complaint," verifying that a filed copy of the process and complaint or other document to be served has been mailed by certified mail in accordance with that Rule. Ala. R. Civ. P. 4(i)(2)(ii). The Return of Service shows that the receipt was sent to Relators' counsel, and nothing in the Court's electronic filing system suggests that any Affidavit of Certified Mailing of Process and Complaint was ever filed with the Clerk.

service. *See* FRCP 4(h)(1)(A) and (e)(1); <u>Jackson v. Vaughan Regional Medical Center</u>**,** 2009 WL 3242082, *4 (S.D. Ala. Oct. 6, 2009) (simply mailing a certified envelope addressed to the Vaughan Regional Medical Center, Jackson unquestionably did not satisfy Alabama's service of process requirements under Ala. R. Civ. P. 4(c)(6) and, thus, was ineffective under FRCP 12(b)(5)); *see also* <u>Alfa Corp. v. Alfagres, S.A.</u>*,* 385 F. Supp. 2d 1230, 1238 (M.D. Ala. 2005) ("when attempting to serve a corporation by certified mail, the summons and complaint must be *addressed* to either a managing or general agent, or any agent authorized by appointment or by law to receive service of process, pursuant to Rule 4(c)(6)").

Relators' defective service should be quashed by the Court. <u>Rhodes v. J.P. Sauer & Sohn, Inc.</u>, 98 F. Supp. 2d 746, 750 (W.D. La. 2000); <u>Korman v. I.R.S.</u>, 2007 WL 404041, *1 (S.D. Fla. Feb. 2, 2007). If, Relators persist in failing to comply with the Federal Rules, this action should be dismissed.

### IV. This Court Lacks Personal Jurisdiction Over Austal Under FRCP 12(b)(2) Because Of Relators' Defective Service Of Process.

In any civil action, a plaintiff is responsible for properly serving a defendant with a summons and copy of the complaint. <u>PNCEF, LLC v. Hendricks Bldg. Supply, LLC</u>, 2010 WL 1856291 (S.D. Ala. Apr. 29, 2010) (citing <u>Lepone-Dempsey v. Carrol County Comm'rs</u>, 476 F.3d 1277, 1281-1281 (11th Cir. 2007). Without proper service of process, a court cannot obtain personal jurisdiction over

a defendant. FRCP 4(k)(1); Hemispherix Biophrama, Inc. v. Johannesburg Consol. Investments, 553 F.3d 1351, 1360 (11th Cir. 2008); In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1299 (11th Cir. 2003 In this case, because Relators' counsel failed to serve Austal, this Court lacks personal jurisdiction over Austal. Unless that defective service is remedied pursuant to FRCP 4, this action should be dismissed pursuant to FRCP 12(b)(2).

## CONCLUSION

The Relators' Complaint is fatally flawed from both a procedural and a substantive standpoint. The alleged basis for liability amount to nothing more than a recitation of the statutory language from the FCA, buoyed up by generalities, outright speculation, incredulous claims, and a few examples which actually contradict Relators' claims. The Complaint lack the requisite "indicia of reliability" under Rule 9(b)'s heightened pleading standards for fraud. Relators First and Second Claims are completely devoid of the "who, what, where and when of alleged false statements" necessary to establish liability under FCA complaint and fall far short of the requirement to plead fraud under FRCP 9(b). They are so generic, that they do not even rise to the level of a plausible *prima facie* basis for a well-plead complaint under FRCP 8 and, thus, also fail to state a claim upon which relief can be granted under FRCP 12(b)(6). The Third Claim of Relators' Complaint suffers from a similar failure to plead a *prima facie* basis upon which

relief can be granted under FRCP 12(b)(6), in that none of the actions to which the Relators point constitutes "protected conduct" under 31 U.S.C. § 3730(h). None of Relators' complaints could reasonably be considered to have been an alleged violation of one (1) or more violations of the FCA as pled in their Complaint. Finally, the events surrounding Relators' counsel's ineffective service upon Austal under Alabama law mandate that the Court quash service of process under FRCP 12(b)(5) and/or dismiss this case for lack of personal jurisdiction FRCP 12(b)(2).

For all of foregoing reasons, Defendant, Austal, respectfully request that the Court issue an Order dismissing the June 9, 2014, Complaint in its entirety and/or quashing Relators' counsel's defective service of process.

Respectfully submitted,

*s/ C. William Daniels, Jr .*
C. WILLIAM DANIELS, JR. (DANIC4169)

**Counsel for Austal USA, LLC**

**OF COUNSEL:**

BURR & FORMAN LLP
P. O. Box 2287
Mobile, AL 36652-2287
Telephone: (251) 344-5151
Facsimile: (251) 344-9696

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2015, I served a copy of the foregoing Plaintiff's Memorandum Brief in Support of its Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Thomas M. Loper, Esq.      Derdre L. Colson, Esq.
David C. Tufts, Esq.      Assistant United States Attorney
The Gardner Firm, P.C.      United States Attorney's Office
210 S. Washington Avenue      Southern District of Alabama
Mobile, Alabama 36602      Riverview Plaza, 63 S. Royal Street, Suite 600
      Mobile, Alabama 36602

*s/ C. William Daniels, Jr .*