IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *ex rel.*, WILLIAM GATES, | : | |
| CLINTON ROUNTREE, JAMES | : | |
| TRAINOR, and TAMI ANDREWS, | : | |
| | : | |
| Plaintiff/Relators, | : | |
| | : | |
| vs. | : | |
| | : | CIVIL ACTION 14-0261-CG-M |
| AUSTAL USA, LLC, | : | |
| | : | |
| Defendant. | : | |

REPORT AND RECOMMENDATION

The Motion to Dismiss filed by Defendant Austal USA, LLC, (Docs. 34-35) has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2; Defendant also filed a Motion to Strike (Doc. 33). The Plaintiff/Relators invoked federal jurisdiction pursuant to provisions of the False Claims Act (hereinafter *FCA*), 31 U.S.C. § 3729 *et seq.*, pursuant to 28 U.S.C. § 1331 (Doc. 30). After consideration of the relevant pleadings of record, the undersigned recommends that Defendant's Motion to Dismiss (Docs. 34-35) be granted as to claims one and two and that the Motion be denied as to claim three. It is recommended that Defendant's Motion to Strike

(Doc. 33) be granted.

The facts are, briefly, as follows.  Plaintiff/Relators[1] One, Two, Three, and Four are William Gates, Clinton Rountree, James Trainer, and Tami Andrews; they worked for Defendant, Austal USA, LLC (hereinafter *Austal*), respectively, as a Supervisor from September 2010 to September 2013; as an A-class welder from August 2011 to June 2013; as a Senior Designer from January 2011 to April 2012; and as a Fit Out Coordinator from January 2009 to February 2012 (Doc. 30, ¶¶ 3-6).  Defendant constructed aluminum vessels in Mobile, Alabama for the United States Navy and, until recently, the Army (*id.* at ¶¶ 2, 7-8). The two types of vessels, Littoral Combat Ships (hereinafter *LCS*'s) and Joint High Speed Vessels (hereinafter *JHSV*'s), were constructed simultaneously (*id.* at ¶¶ 19, 23, 26).

During the Relators' employment, the Navy made "progress payments" to Austal following Defendant's submission of invoices for completed Contract Line Item Numbers (hereinafter *CLIN*) and costs incurred (including labor) (*id.* at ¶¶ 27-29, 32).  CLIN's "corresponded with specific LCS or JHSV vessels and components" that were to be completed by specified dates (*id.* at ¶¶ 27-28).

---

[1]The Court will use the terms *Plaintiffs* and *Relators* interchangeably and will recognize the individuals, specifically, by number when pertinent.

"Defendant used a software system called Labor Metrics to record" labor data relevant to the work performed, including, among other things, activity description, date, time worked, and vessel, each with its unique computer code (*id.* at ¶ 31); each employee was classified by professional trade experience, employment length, and company rank (*id.* at ¶ 38). The Austal-Navy contract defined employee numbers allowed per vessel, as well as compensation rates, by trade and company rank (*id.* at ¶ 39). The data from Labor Metrics was processed to generate Actual Cost Data Reports (hereinafter *ACDR*) submitted to the Navy for payment (*id.* at § 32).

Relators One and Two observed information entered into Labor Metrics that reflected higher employee work ranks than was accurate (*id.* at ¶ 35); they knew employees whose timesheets classified their work rank incorrectly (*id.* at ¶ 46).

In late summer 2012, Relator Two learned that his time was being billed to the Navy as a supervisor, instead of an A-class welder, though he was never a supervisor for Austin (*id.* at ¶¶ 41-42, 52; *see also* Doc. 30, Exhibits 1-2); he reported the error to Defendant's Human Resources Department, but the designation continued through April 2013 (*id.* at ¶¶ 43-44). Plaintiffs suggest that because Relator Two is African-American, his classification as a supervisor fulfilled contract provisions requiring a certain number of minority supervisors (*id.* at ¶¶

3

47—48).  The supervisor classification also allowed Defendant to bill Relator Two's time as an overhead expense rather than having excessive hours assigned to a particular vessel (*id.* at ¶¶ 49-50).  Plaintiffs assert that Austal knowingly submitted this false data for payment (*id.* at ¶ 53).

Relators One and Two also witnessed other employees' work billed to the wrong ship (*id.* at ¶ 55).  Relator One witnessed employee time billed to tasks, overhead, or administrative expenses incorrectly (*id.* at ¶¶ 57-58; *see also* Doc. 30, Exhibit 3).  He states he was instructed by his foreman, Marty Woods, and his department's Technical Support, Karen Lai, to bill his time to overhead rather than to drawing modules (*id.* at ¶ 59; *see also* Exhibit 3); there were other occasions he was instructed to enter his time improperly (*id.* at ¶¶ 60, 63).  Relator One witnessed his work as a supervisor being billed to one vessel while that of his work crew was billed to another (*id.* at ¶ 61).  He also witnessed work for one project "at one stage of production being billed to projects at later stages of production;" this resulted in the Defendant's need to "request additional budgeted time and financial resources in order to complete projects that the U.S. Navy had been informed were complete" (*id.* at ¶ 62).  He was instructed by his supervisor, Foreman Coy Smith, to bill work as "rework" rather than to the Modular Manufacturing Facility (hereinafter *MMF*) (*id.* at ¶ 63;

*see also* Doc. 30, Exhibit 4).  Relator One was ordered by his supervisor, Foreman Marty Woods, to move materials from one vessel to another without any accounting adjustment; Scott Drake was the Lead Foreman in charge (*id.* at ¶ 65; *see also* Doc. 30, Exhibit 5).

Plaintiffs One and Two "were often not provided timesheets to sign until weeks after the timesheet period" had passed and they had no opportunity to review them for correctness (*id.* at ¶ 63).  Often, the hourly compensation records were submitted to the Navy before the employees were given the opportunity to review their timesheets (*id.* at ¶ 66).

Relators Three and Four worked in the Fit Out Group in the Engineering Department and were instructed by their supervisor, Thad Williams, to make incorrect time entries for work done on Navy vessels (*id.* at ¶¶ 68-69, 71).  In November 2011, Relators Three and Four, independently, reported to Marcene Emmett, in Human Resources, that Williams had instructed them to enter incorrect time entries, but their supervisor instructed them to continue to enter the false data (*id.* at ¶¶ 72-73).  Later that month, Relator Three reported the conduct to Defendant's Assistant Engineering Manager, Taylor Williams, but his supervisor, nevertheless, instructed him to continue as formerly directed (*id.* at ¶¶ 74-75).

Relator Three was terminated in April 2012; Plaintiff

asserts it was retaliation for reporting his supervisor's falsifying data (*id.* at ¶ 78).  Defendant stated the reason for termination was lack of work in the Fit Out Group, though within the month, Austal hired new designers whose new total outnumbered the previous number (*id.* at ¶¶ 79-80).

Relator Four also reported his supervisor's fraudulent reporting to the Defendant's Assistant Engineering Manager, Taylor Williams, and Emmett from Human Resources (*id.* at ¶ 81). In February 2012, Relator Four felt compelled to resign because she had been cited for verifying a drawing improperly, even though it was the method she had used previously that led to no disciplinary action (*id.* at ¶¶ 82-84).  Plaintiff asserts her resignation was retaliation for her disclosure of fraudulent reporting (*id.* at ¶ 82).

On June 9, 2014, these Relators filed this action in this Court under seal (Doc. 1).  On June 27, a fifth Relator filed a Notice voluntarily dismissing her claims in this action (Doc. 3).  On February 27, 2015, the United States of America gave Notice that it was declining to intervene in this action (Doc. 9).  On March 2, United States District Judge Granade ordered that the Complaint be unsealed and that Plaintiffs serve Defendant (Doc. 10).

On April 20, the four Relators filed a First Amended Complaint, raising three claims that the Defendant had violated

the FCA (Doc. 30).  Plaintiffs seek treble damages and a civil
penalty on the first two claims; in claim three, Relators Three
and Four seek reinstatement, twice the amount of their backpay
plus interest, and special damages.  All Relators seek an award
of expenses, attorney's fees, and costs (Doc. 30).

On May 4, 2015, Defendant filed a Motion to Dismiss the
First Amended Complaint (Docs. 34-35).  The Relators filed a
Response (Doc. 41) to which Austal filed a Reply (Doc. 43).
Also on May 4, Defendant filed a Motion to Strike ¶¶ 85-88 from
the First Amended Complaint (Doc. 33).  The Relators filed a
Response (Doc. 40) to which a Reply was filed (Doc. 42).  The
Court will first address Defendant's Motion to Dismiss.

The Court notes, initially, that "[w]hen considering a
motion to dismiss, all facts set forth in the plaintiff's
complaint 'are to be accepted as true and the court limits its
consideration to the pleadings and exhibits attached thereto.'"
*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.
2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510
(11th Cir. 1993)).  In order to state a claim for relief, the
Federal Rules of Civil Procedure state that a pleading must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The
United States Supreme Court explained that the purpose of the
rule was to "give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests."
*Conley v. Gibson*, 355 U.S. 41, 47 (1957).[2]  Factual allegations
must contain more than "labels and conclusions;" "a formulaic
recitation of the elements of a cause will not do."  *Bell
Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007)
(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Facts
that are 'merely consistent with' the plaintiff's legal theory
will not suffice when, 'without some further factual enhancement
[they] stop short of the line between possibility and
plausibility of "entitle[ment] to relief."'"  *Weissman v.
National Association of Securities Dealers, Inc.*, 500 F.3d 1293,
1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting
*DM Research, Inc. v. College of American Pathologists*, 170 F.3d
53, 56 (1st Cir. 1999)).  "Only a complaint that states a
plausible claim for relief survives a motion to dismiss."
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombley*,
550 U.S. at 556).  "Where the well-pleaded facts do not permit
the court to infer more than the mere possibility of conduct,

---

[2]*Conley* also stated that "a complaint should not be dismissed for
failure to state a claim unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief." *Conley*, 355 U.S. at 45-46.  The U.S.
Supreme Court has done away with this standard in *Bell Atlantic
Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The
undersigned, nevertheless, finds *Conley*'s statement regarding the
purpose of Rule 8(a)(2) to be useful here in deciphering the analysis
necessary for evaluating Plaintiff's claims.

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In its Motion, Austal asserts that the Plaintiffs' first two claims should be dismissed because they do not specifically define the fraud alleged sufficient to support a claim for relief (Doc. 35, pp. 8-17).

By way of background, the Court notes that the False Claims Act

> "authorizes private citizens to bring actions on behalf of the United States.  31 U.S.C. § 3730(b).  These plaintiffs are known as *qui tam* relators.  To establish a cause of action under the [FCA], a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.  31 U.S.C. § 3729(a).

*United States ex rel. Walker v. R & F Properties of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005), *cert. denied*, 549

U.S. 1027 (2006).  In claim one, under § 3729(a)(1)(A),[3] Relators accuse Austal of presenting false claims of employees' work classifications and stations to the Navy for payment (Doc. 30, ¶¶ 97-98).  In claim two, Relators sue under § 3729(a)(1)(B), claiming that Austal prepared false records to support the false claims submitted to the Navy for payment (Doc. 30, ¶¶ 102-03).

Defendants argue that these claims must be particularly pled (Doc. 35).  Rule 9(b) of the Rules of Civil Procedure instructs that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The Eleventh Circuit Court of Appeals held that "Rule 9(b) [applies] to actions under the False Claims Act."  *United States ex rel. Clausen v. Laboratory Corporation of America, Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).  That Court further held that Rule 9(b) is satisfied if the complaint "plead[s] 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the

---

[3]"[A]ny person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government for a civil penalty."  31 U.S.C. § 3729(a)(1).

defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.'"  *Clausen*,[4] 290 F.3d, at 1310 (*quoting United States ex rel. Cooper v. Blue Cross & Blue Shield of Florida*, 19 F.3d 562, 567-68 (11th Cir. 1994)).  Specifically,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representa-tions or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Clausen*, 290 F.3d at 1310 (*quoting Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Having accepted the Relators' assertions as true, the undersigned made findings earlier that form Plaintiffs' three asserted reports of fraudulent behavior:

> 1) In late summer 2012, Relator Two learned that his time was being billed to the Navy as a supervisor, instead of an A-class welder; he reported the error to Defendant's Human Resources Department, but the designation continued through April 2013

---

[4]Relators have urged the Court to recognize the relaxed standards found in other courts (Doc. 41, pp. 4-6), but recent circuit decisions affirm *Clausen*'s precedential value.  *See United States ex rel. Keeler v. Eisai, Inc.*, 568 Fed.Appx. 783, 800-03 & n.18, 19 (11th Cir. 2014).

(Doc. 30, ¶¶ 41-44, 52).

2) Relator One states he was instructed by his foreman, Marty Woods, and his department's Technical Support, Karen Lai, to bill his time to overhead rather than to drawing modules (*id.* at ¶ 59, Exhibit 3). He was instructed by his supervisor, Foreman Coy Smith, to bill work as "rework" rather than to MMF (*id.* at ¶ 63, Example 4). Relator One was ordered by his supervisor, Foreman Marty Woods, to move materials from one vessel to another without any accounting adjustment; Scott Drake was the Lead Foreman in charge (*id.* at ¶ 65, Exhibit 5).

3) In November 2011, Relators Three and Four, independently, reported to Marcene Emmett in Human Resources that they had been instructed, by their Supervisor Thad Williams, to enter incorrect time data (*id.* at ¶¶ 69, 72-73). Later that month, Relator Three reported the conduct to Defendant's Assistant Engineering Manager, Taylor Williams, but his supervisor, nevertheless, instructed him to continue as formerly directed (*id.* at ¶¶ 74-75). Relator Four also reported his supervisor's fraudulent reporting to the Defendant's Assistant Engineering Manager, Taylor Williams, and Emmett from Human Resources (*id.* at ¶ 81).

Before examining the reports separately though, the Court notes that none provide any evidence of "what the defendant[] obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310. Though Plaintiffs, in their Complaint, explain the procedures for preparing relevant data via software to generate ACDR's for submitting bills to Defendant, no evidence was produced showing that Austal, or anyone on its behalf, generated a false statement in order to present a fraudulent claim to the

United States.  Likewise, the Relators have not demonstrated
that a fraudulent bill was presented to the United States for
payment.[5]

As noted in *Clausen*, "if Rule 9(b) is to be adhered to,
some indicia of reliability must be given in the complaint to
support the allegation of an *actual false claim* for payment
being made to the Government."  *Clausen*, 290 F.3d 1311.  The
Relators named Navy personnel who received ACDR's and invoices
from Defendant (Doc. 30, ¶ 32), but named no one who submitted
them; none are provided for the Court's inspection.[6]  "The
submission of a claim is . . . the *sine qua non* of a False
Claims Act violation."  *Clausen*, 290 F.3d at 1301.  The
undersigned finds that the Relators have not shown that a false
claim was made.

Nevertheless, having reaching that conclusion, the
undersigned will review the assertions made in the three reports

---

[5]The following assertion, found in the First Amended Complaint,
is an example of the "evidence" that has been presented:  "Upon
information and belief, during the time of Relators' employment with
Defendant, Defendant knowingly presented one or more invoices and/or
ACDRs to the U.S. Navy (or U.S. Army) containing this falsified data
entered into Labor Metrics in order to win and maintain contracts for
the construction of marine vessels, and to obtain progress payments
toward the construction of the LCS and JHSV" (Doc. 30, ¶ 37; *see also*
¶¶ 52-53, 66-67, 76, 90-92).
[6]The undersigned finds that Plaintiffs' three Exhibits
demonstrate Defendant's procedure for gathering time-work records
(Doc. 41 Exhibits), but finds nothing showing that those time sheets
were submitted for fraudulent payment by Defendant.

under the *Clausen* framework to show that Plaintiff's assertions fall short of Rule 9(b) and *Clausen* in other ways.

In the first instance of fraud, Relator Two alleges that he reported that his time was being billed as a supervisor, instead of an A-class welder, to someone in the Human Resources Department in late summer 2012.  This assertion fails to assert a specific date that the report was made, where the complaint was made, the specific person to whom it was made, and the person who was incorrectly reporting his time.  Even if the Court were to assume that the report was made at Defendant's Human Resources Department and that the person improperly reporting his time was Raymond H. Fussell (*see* Doc. 30, Exhibits 1-2), the Court still finds the asserted facts to fall short of *Clausen* as "late summer 2012" is not at all specific and there is still the question of the person to whom the report was made.

In the second instance, Plaintiff One relates occasions of his being instructed by a supervisor or technical support personnel to improperly report his time.  However, there is no assertion that he actually reported the false time entries, or when, where, and to whom it was made.  At best, the Court must assume, because it is not specifically set out as such, that the report was made about the activities of his supervisor and technical support personnel who are named in the Complaint. While Exhibit 3 does provide evidence that certain time was

14

improperly billed, there is nothing in it to indicate that Relator One initiated the query (Doc. 30).  Exhibit 4, at most, shows that Relator One was instructed to redo prior submitted reports because of a change in procedure; it does not show that he initiated—or did anything to effectuate—the change by reporting fraudulent activity (Doc. 30).  Exhibit 5 shows from where material could be retrieved, if needed; it does not show that anyone was reported for moving material or where, when, or to whom such a report was made (Doc. 30).

In the third set of Court findings, Relators 3 and 4 both reported, independently, in November 2011 to Emmett in Human Resources and later to Assistant Engineering Manager Williams that they had been instructed to report improper time data. Again, though a report was made, there are no assertions of when or where it was made.

The Court finds that the Relators' failure to show, with specificity, that false claims for payment were submitted by Defendant to the United States is fatal to their first two claims under Fed.R.Civ.P. 9(b), *Clausen*, *Iqbal*, and *Twombley*. Though Plaintiffs have alleged inconsistencies or irregularities in Defendant's billing process, the undersigned finds the evidence insufficient to recommend that these claims be allowed to proceed.  Therefore, it is recommended that Defendant's Motion to Dismiss (Doc. 35) be granted as to the Relator's first

two claims.

In the third count of the Amended Complaint, Relators Three and Four claim they were retaliated against for reporting fraudulent falsification of data, causing them to resign or be terminated.  (Doc. 30, ¶¶ 106-10).   This claim is made pursuant to statutory language, stating as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).[7]  "Employees enjoy this right even if they are not aware of the existence of the False Claims Act at the time they attempt to stop the false claim."  *McShea v. School Board of Collier County*, 58 F.Supp.3d 1325, 2343-44 (M.D. Fla. 2014) (*citing Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996), *cert. denied*, 519 U.S. 1148, 117 S.Ct.

---

[7]This version of the Whistleblower Provision only applies to conduct on or after May 20, 2009.  Pub.L. No. 111-21, § 4(f), 123 Stat. 1612, 1625.  Therefore, it is of no moment that Relator Four was employed prior to this date as all asserted conduct came after it.

1080, 137 L.Ed.2d 216 (1997) ("Nothing in the language of § 3730 suggests that its protections are limited to those who were motivated by it")).  The Court notes no requirement that a plaintiff successfully prosecute a FCA claim before retaliation claims be considered.  *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303-04 (11th Cir. 2010).  The Court further notes that FCA retaliation claims do "not depend on allegations of fraud," so a complaint alleging retaliation need only contain "'a short and plain statement of the claim showing that [the plaintiff is] entitled to relief.'"  *Sanchez*, 596 F.3d at 1304 (*quoting* Fed.R.Civ.P. 8(a)).

In pleading retaliation under the FCA, "a plaintiff must allege that (1) she engaged in lawful acts in furtherance of an FCA action or endeavored to prevent at least one violation of the FCA; and (2) she was, as a result, subjected to some form of discrimination in the terms and conditions of her employment." *Reddick v. Jones*, 2015 WL 1519810, *4 (N.D. Ga. March 11, 2015). A good explanation of the provision can be found in *Arthurs v. Global TPA, LLC*, 2015 WL 1349986 (M.D. Fla. March 25, 2015):

> Congress expanded both the category of persons and the category of conduct protected by the FCA.  Regarding protected conduct, §3730(h)(1) can be parsed into two clauses:  the litigation clause and the opposition clause.  *See* John T. Nicolaou, Note, *Whistle While You Work:  How the False Claims Act Amendments Protects Internal*

17

*Whistleblowers*, 2011 Colum.Bus.L.Rev.  531, 564-65 (2011).  The litigation clause protects conduct "in furtherance of an action under [the FCA]."  31 U.S.C. § 3730(h)(1) (2012).  On the other hand, by using the disjunctive "or," the opposition clause additionally protects conduct "in furtherance of . . . other efforts to stop 1 or more violations of this subchapter."  *Id.*  Standing in contrast to § 3730(h)(1)'s litigation clause, the opposition clause's plain language unambiguously contemplates protecting conduct pursued outside the context of potential FCA litigation.  This interpretation is further bolstered by the statute's legislative history, which confirms that conduct "such as internal reporting to a supervisor or company compliance department and refusals to participate in the misconduct" are protected under § 3730(h)(1).  155 Cong. Rec. E1295-03 (statement of Rep. Berman), 2009 WL 1544226.  Therefore, the Court concludes that the "distinct possibility"[8] standard cannot be used where a protected person alleges opposition clause conduct—conduct that furthers other, non-litigation efforts to stop FCA violations—because there is no possible litigation for an employer to anticipate.  Reading the statute otherwise would essentially render the final twelve words of § 3730(h)(1) meaningless, a result Congress surely did not intend.

Although the Eleventh Circuit has not yet addressed the issue, other courts have reached the same conclusion.  In *Halasa v. ITT Educational Services, Inc.*, 690 F.3d 844 (7th Cir. 2012), the Seventh Circuit characterized § 3730(h)(1) as protecting two

---

[8]The Court notes "courts in the Eleventh Circuit applied the 'distinct possibility' standard for analyzing whether conduct [was] protected by the FCA" in claims brought prior to § 3730(h)'s amendment.  *Arthurs*, 2015 WL 1349986, *4.

18

types of conduct:  conduct in furtherance of
FCA litigation and other conduct, "such as
reporting suspected misconduct to internal
supervisors." *Id.* at 847-48.  In *United
States ex rel. Tran v. Computer Sciences
Corp.*, No. 11-cv-0852 (KBJ), 2014 WL 2989948
(D.D.C. July 3, 2014), the district court
for the District of Columbia similarly
recognized Congress' intent to expand
protected conduct to include other, non-
litigation activities.  *Id.* at *21-22; *see
also Townsend v. Bayer Corp.*, 774 F.3d 446,
453 n.1 (8th Cir. 2014) (noting the purpose
behind broadening the type of conduct
protected by § 3730(h)(1).

The opposition clause is not without
bound, however.  By the explicit terms of
the statute, only conduct which is taken as
an "effort to stop" the violation is
protected.  31 U.S.C. § 3730(h)(1) (2012).
Therefore, a person who acts to oppose an
FCA violation for reasons other than
protecting the federal government from
potential fraud has not engaged in protected
conduct.  Likewise, a person who quietly
refuses to participate in violative behavior
with the silent hope that others will take
notice is also not protected.  *See Tran*,
2014 WL 2989948, at *22.  Indeed, the FCA's
purpose can only be accomplished by
encouraging individuals protected by the
statute to "come forward with allegations of
fraud perpetrated upon the government."
*Roberts v. Accenture, LLP*, 707 F.3d 1011,
1018 (8th Cir. 2013).

*Arthurs*, 2015 WL 1349986, *4-5.  This Court agrees with *Arthurs'*

analysis and adopts it for use in this action.

Accepting the Relators' assertions as true, the undersigned

made findings earlier that form Plaintiffs' retaliation claims:

In November 2011, Relators Three and

Four, independently, reported to Marcene
Emmett, in Human Resources, that Supervisor
Williams had instructed them to enter
incorrect time entries for work performed
(Doc. 30, ¶¶ 68, 72-73).  Later that month,
Relator Three reported the conduct to
Defendant's Assistant Engineering Manager,
Taylor Williams (*id.* at ¶ 74).  Relator
Three was terminated in April 2012 (*id.* at ¶
78).

Relator Four also reported his
supervisor's fraudulent reporting to the
Defendant's Assistant Engineering Manager,
Taylor Williams, and Emmett from Human
Resources (*id.* at ¶ 81).  In February 2012,
Relator Four felt compelled to resign
because she had been cited for verifying a
drawing improperly, even though it was the
method she had used previously that led to
no disciplinary action (*id.* at ¶¶ 82-84).

Keeping in mind that the allegations of retaliation are
measured under the requisites of Fed.R.Civ.P. 8, the undersigned
finds that Relators Three and Four engaged in oppositional
conduct under the *Arthurs*' analysis.  This, coupled with their
subsequent termination and compelled resignation, state a claim
for retaliation against Defendant sufficient to survive the
Motion to Dismiss.

However, Austal raises several other defenses with regard
to the retaliation claim.  First, Defendant asserts that the
Amended Complaint differs from the originally-filed complaint
and, because of the changes, was not filed before the three-year
statute of limitations period expired (Doc. 35, pp. 21-23; Doc.
43, pp. 12-13).  Austal argues that the newly-asserted facts do

not relate back to the original claim.

The Whistleblower Provision states that a civil action filed under it "may not be brought more than 3 years after the date when the retaliation occurred."  31 U.S.C. § 3730(h)(3).

Relator Four's last work date was February 14, 2012 while Relator Three's was April 13, 2012 (*see* Doc. 35, Exhibits 1-2). This action was filed June 9, 2014 (Doc. 1), clearly within the three-year period.  The Amended Complaint was filed on April 20, 2015, a date that would exceed the three-year-period if Austal's argument were correct.

Plaintiffs assert, however, that the Federal Rules of Civil Procedure allow for a breach of the limitations period if "[a]n amendment to a pleading relates back to the date of the original pleading [such as] when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B); *see* Doc. 41, pp. 9-11.  As noted by Wright, Miller, and Kane, Rule 15(c) does not authorize relation back "if plaintiff attempts to allege an entirely different transaction" than was set forth in the original pleading. Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d § 1497.  The treatise goes on to state:

> Because the rationale of the relation-
> back rule is to ameliorate the effect of the

statute of limitations, rather than to
promote the joinder of claims and parties,
the standard for determining whether
amendments qualify under Rule 15(c) is not
simply an identity of transaction test.
Although not expressly mentioned in the
rule, the courts also inquire into whether
the opposing party has been put on notice
regarding the claim or defense raised by the
amended pleading.  Only if the original
pleading has performed that function, which
typically will be the case if the letter of
the test set forth in Rule 15(c)(1)(B) is
satisfied, will the amendment be allowed to
relate back to prevent the running of the
limitations period in the interim from
barring the claim or defense. . . . But if
the alteration of the original pleading is
so substantial that it cannot be said that
defendant was given adequate notice of the
conduct, transaction, or occurrence that
forms the basis of the new claim or defense,
then the amendment will not relate back and
will be time barred if the limitations
period has expired.  Thus, a failure of
notice will prevent relation back.

*Id.* (citations omitted).  Wright, Miller, and Kane went on to

note that "the fact that an amendment changes the legal theory

on which the action initially was brought is of no consequence

if the factual situation upon which the action depends remains

the same and has been brought to defendant's attention by the

original pleading."  *Id.*

Here, the Court notes that Plaintiffs amended their

Complaint twenty-one days after Austal submitted its first

Motion to Dismiss (see Docs. 16, 30), doing so within the

provisions of Fed.R.Civ.P. 15(a)(1)(B).  Austal received notice

of the suit no later than March 16 this year (Doc. 13); the
Amended Complaint was filed thirty-five days later (Doc. 30).
The Court finds that Defendants have not argued—much less
demonstrated—that the delay of notice those thirty-five days has
prejudiced them in any way.

The Court will now consider whether the Relators'
"amendment asserts a claim [] that arose out of the conduct,
transaction, or occurrence set out—or attempted to be set out—in
the original pleading."  Fed.R.Civ.P. 15(c)(1)(B).  Austal has
specifically urged the Court to compare paragraphs 86, 87, and
102 of the Complaint with paragraphs 91, 92, 93, and 107 in the
Amended Complaint (Doc. 35, p. 21).  The Court will set them out
herein, starting with the Complaint:

> 86.  Upon information and belief,
> Defendant knowingly provided the U.S. Navy
> with the falsified data entered into Labor
> Metrics with knowledge that the U.S. Navy
> was relying on such data to evaluate
> Defendant's performance under existing
> contracts and to evaluate the bids of
> Defendant for subsequent contracts with the
> U.S. Navy to build future LCSs and JHSVs.
> 87.  Upon information and belief, the
> U.S. Navy relied on the falsified data
> entered into Labor Metrics by Defendant to
> evaluate Defendant's performance under
> existing contracts and to evaluate the bids
> of Defendant for subsequent contracts with
> the U.S. Navy to build future LCSs and
> JHSVs.
> 88.  Upon information and belief, if
> the U.S. Navy had been made aware of
> Defendant's fraudulent submission of Labor

Metrics data it would have:  (a) taken legal
action to rescind, or seek damages for
breach of, existing contracts with
Defendant; and (b) denied an award of any
further contracts to Defendant.[9]

***

102.  By reporting Thad Williams'
fraudulent falsification of data entered
into the Labor Metrics system on which the
U.S. Navy relied to award and maintain
contracts with Defendant for the
construction of marine vessels, Relators
Three, Four and Five engaged in efforts to
stop 1 or more violations of the False
Claims Act.

(Doc. 1).  This is to be compared with the following language:

91.  Upon information and belief,
during the time of Relators' employment
Defendant knowingly provided the U.S. Navy
with the falsified data entered into Labor
Metrics with knowledge that the U.S. Navy
was relying on such data to evaluate
Defendant's performance under existing
contracts, to make payments to Defendant for
the completion of certain construction
milestones (progress payments), and to
evaluate the bids of Defendant for
subsequent contracts with the U.S. Navy to
build future LCSs and JHSVs.
92.  Upon information and belief,
during the time of Relators' employment the
U.S. Navy relied on the falsified data
entered into Labor Metrics by Defendant to
evaluate Defendant's performance under

_____

[9]To make a true comparison, the Court felt obliged to add
paragraph 88 to the comparison.

existing contracts, to make payments to
Defendant for the completion of certain
construction milestones (progress payments),
and to evaluate the bids of Defendant for
subsequent contracts with the U.S. Navy to
build future LCSs and JHSVs.

93.   Upon information and belief, if
the U.S. Navy had been made aware of
Defendant's fraudulent submission of Labor
Metrics data it would have:  (a) denied
progress payments to Defendant; (b) exercise
its remedies against Defendant under the
contracts for the LCS and JHSV; (c) taken
legal action to rescind, or seek damages for
breach of, existing contracts with
Defendant; and/or (d) denied an award of any
further contracts to Defendant.

\*\*\*

107.  By reporting Thad Williams'
fraudulent falsification of data entered
into the Labor Metrics system on which the
U.S. Navy relied to make progress payments
to Defendant and to award and maintain
contracts with Defendant for the
construction of marine vessels, Relators
Three and Four engaged in efforts to stop 1
or more violations of the False Claims Act.

(Doc. 30).

The undersigned finds very little difference in the

language from the two pleadings.  While true that the Amended

Complaint includes language not previously pled, Defendant

cannot deny that it was put on notice, in claim three in both

the Complaint and Amended Complaint, that Relators Three and

Four were asserting a claim for retaliation under the False

Claims Act.

The undersigned recommends that Austal's Motion to Dismiss Plaintiff's claim of retaliation for violating the statute of limitations be denied (Doc. 34).

Defendant next argues (Doc. 35, pp. 24-25) that the Amended Complaint should be dismissed for Plaintiff's failure to comply with the mandatory filing prerequisites of § 3730(b)(2), requiring as follows as follows:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action with 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2). Austal specifically asserts that new language in paragraphs 32, 37, 72, 74, 76, and 81 of the Amended Complaint raise assertions not contemplated in the Complaint, failing to meet the subsection's requirement of disclosing "substantially all material evidence and information."

The Court notes that Defendant does not raise this argument with regard to the Complaint, but to the Amended Complaint (Doc. 35, pp. 24-25). Citing only district court decisions from Virginia and Massachusetts, Austal admits this is, most likely,

a claim of first impression in the Eleventh Circuit.  The Court
will examine Defendant's proffered cases.

In *United States ex rel. Davis v. Prince*, 766 F.Supp.2d
679, 683-84 (E.D. Va. 2011), the Court held that subsection
(b)(2)'s requirement encompassed amended complaints.  Though
plaintiff there failed to file the amended complaint under seal,
the Court determined that the amendments were "substantially
similar to the original complaint" and denied the motion to
dismiss.  *Davis*, 766 F.Supp.2d at 685.  In *United States ex rel.
Wilson v. Bristol Myers Squibb, Inc.*, 2011 WL 2462469 (D. Mass.
June 16, 2011), *aff'd*, 750 F.3d 111 (1st Cir. 2014), the District
Court Judge, without specifically holding that subsection (b)(2)
was applicable to amended complaints, held that the amendments
in that action raised new allegations that did not comply with
the requirements of subsection (b)(2); as such, plaintiff's
motion to amend the complaint was denied.[10]  In the third case
cited by Defendant, the District Court Judge held that §
3730(b)(2) prerequisites were not applicable to an amended
complaint as the original complaint had complied with those
prerequisites, the government had had sufficient time (six

---

[10]In affirming the lower court decision, the Appellate Court
found that the District Court had denied plaintiff's motion, in part,
because the new allegations "violated the qui tam filing and service
requirements" of § 3730(b)(2).  *Wilson*, 750 F.3d at 115.

months) to consider the original complaint in choosing not to intervene, and the amended complaint "merely added specificity to the allegations contained in the original complaint." *United States ex rel. Ubl v. IIF Data Solutions*, 2009 WL 1254704, *4 (E.D. Va. May 5, 2009). Plaintiff has pointed to *United States ex rel. Hagerty v. Cyberonics, Inc.*, 2015 WL 1442497, *17 (D. Mass. March 31, 2015), that held that it was unnecessary for the amended complaint to be filed under seal as it contained substantially similar allegations as the original complaint.

The Court will now look to the language in the Amended Complaint cited by Austal as raising a new claim:

> 32. Defendant then processed the data entered into Labor Metrics through another system (IFS) to generate Actual Cost Data Reports (ACDR). The ACDRs reflected the date entered into Labor Metrics concerning work purportedly performed by Defendant in constructing the LCS and JHSV. During the times Relators were employed by Defendant, Defendant's billing department submitted invoices along with ACDRs to Amanda Phillips, Eric Lautenschlager, K. Todd Tompkins, or Jason Farrelly (contracting officers for the Naval Sea Systems Command of the U.S. Navy at the Washington Navy Yard) in order to receive progress payments from the U.S. Navy under the contracts for the LCS and JHSV. Also during the times Relators were employed by Defendant, the U.S. Navy made progress payments to Defendant under the contracts for the LCS and JHSV based on the invoices and ACDRs submitted by Defendant.
>
> ***

28

37.   Upon information and belief,
during the times of Relators' employment
with Defendant, Defendant knowingly
presented one or more invoices and/or ACDRs
to the U.S. Navy (or U.S. Army) containing
this falsified data entered into Labor
Metrics in order to win and maintain
contracts for the construction of marine
vessels, and to obtain progress payments
toward the construction of the LCS and JHSV.

***

72.   In November of 2011, and on other
subsequent occasions, Relators Three and
Four independent reported to Marcene Emmett,
a representative of Defendant's in the Human
Resources Department, that Thad Williams was
instructing his subordinates to make
falsified time entries in Labor Metrics.
Relators Three and Four believed that the
falsified time entries were being submitted
to the U.S. Navy in order to receive
progress payments toward the construction of
the JHSV and LCS and to win and maintain
contracts for such construction.  Relators
Three and Four further believed that by
reporting Thad Williams' misconduct they
were trying to stop Defendant from
defrauding the U.S. Navy or U.S. Army of
progress payments to which Defendant would
not otherwise be entitled.

***

74.   Observing Mr. Williams' continued
misconduct, Relator Three then reported Thad
Williams' misconduct to Taylor Williams,
Assistant Engineering Manager for Defendant
shortly before Thanksgiving in 2011.
Relator Three believed that the falsified
time entries were being submitted to the
U.S. Navy in order to receive progress
payments toward the construction of the JHSV
and LCS and to win and maintain contracts
for such construction.  Relator Three

further believed that by reporting Thad
Williams' misconduct he was trying to stop
Defendant from defrauding the U.S. Navy or
U.S. Army of progress payments to which
Defendant would not otherwise be entitled.

\* \* \*

76.   Upon information and belief, all
invoices and ACDRs submitted to the U.S.
Navy for progress payments during the period
of employment of Relators Three and Four
contained falsified data from Labor Metrics
concerning the work performed by those under
the supervision of Thad Williams in the Fit
Out Group.  Defendant was aware that such
invoices and ACDRs contained such falsified
data by virtue of the reports by Relators
Three and Four to Marcene Emmett and Taylor
Williams.  During the period of employment
of Relators Three and Four, Defendant
received progress payments from the U.S.
Navy based on those invoices and ACDRs
submitted by Defendant.

\* \* \*

81.   After reporting Thad Williams'
fraudulent conduct in November of 2011 to
Mr. Emmett, Relator Four had a meeting with
Mr. Emmett and Taylor Williams in which
Relator Four again complained of Thad
Williams' misconduct.  Relator Four believed
that the falsified time entries were being
submitted to the U.S. Navy in order to
receive progress payments toward the
construction of the JHSV and LCS and to win
and maintain contracts for such
construction.  Relator Four further believed
that by reporting Thad Williams' misconduct
she was trying to stop Defendant from
defrauding the U.S. Navy or U.S. Army of
progress payments to which Defendant would
not otherwise be entitled.

(Doc. 30).

The Court has compared the foregoing language with that in the Complaint and finds them to be substantially similar.  While the facts asserted in ¶¶ 32 and 76 in the Amended Complaint have no equivalent language in the Complaint, the undersigned finds that it expands the discussion of the alleged facts underlying the claims raised originally in the Complaint.  The remaining paragraphs in the Amended Complaint to which Austal points compare favorably to language in the Complaint, only filling in factual details to supplement the already-asserted allegations.[11]

The Court has found that the language in the Amended Complaint is substantially similar to language found in the Complaint.  While there is new language, it more specifically sets out the fraud it alleges Defendant engaged in in the Complaint.

Having reached that decision, the Court finds it unnecessary to render a holding as to whether Plaintiffs were required to filed the Amended Complaint under seal.  In reaching this decision, the Court notes the following factors:  There has been no allegation that the Complaint was improperly filed; the Government had more than eight months to view the Complaint

---

[11]The Court notes that ¶¶ 37, 72, 74, and 81 are similar to ¶¶ 33, 68, 70, and 76 in the Complaint (*cf.* Docs. 30, 1).

before deciding not to intervene (Docs. 1, 9); and Plaintiffs, in the Amended Complaint, have only added specificity to the claims asserted in the Complaint.

Therefore, the undersigned recommends that Defendant's Motion to Dismiss (Docs. 34-35) be denied as to its claim that Plaintiffs failed to comply with the mandatory filing prerequisites of 31 U.S.C. § 3730(b)(2).

In summary, the undersigned recommends that Defendant's Motion to Dismiss (Docs. 34-35) be granted as to claims one and two in the Amended Complaint as Plaintiffs failed to meet the requirements of Fed.R.Civ.P. 9 in pleading them and that the Motion be denied as to claim three as Relators Three and Four have stated a claim for retaliation under the Whistleblower Provision of the False Claims Act.  It is further recommended that Defendant's Motion to Dismiss be denied as to Austal's arguments that the retaliation claims are barred by the statute of limitations and that the entire Amended Complaint should be dismissed for Plaintiff's failure to comply with § 3730(b)(2).

The Court now turns to Defendant's Motion to Strike paragraphs 85-88 in the Amended Complaint, under Fed.R.Civ.P. 12(f), because they concern the fifth Relator, Hannah Christopher, who voluntarily withdrew her claims from consideration (Doc. 33; *see also* Doc. 3).  The language sought to be struck follows:

85.   In November 2011, Hannah
Christopher (an engineer employed by
Defendant in the Fit Out Group under the
supervision of Thad Williams) reported Thad
Williams's fraudulent conduct to Mr. Emmett
and to Jim Larson, Lead Structural Engineer
for Defendant.
86.   In retaliation for continually
reporting Thad Williams' instructions to
falsify of data entered into Labor Metrics,
Defendant terminated Ms. Christopher in
March of 2012.
87.   Defendant cited lack of work in
the Fit Out Group as the grounds for the
termination.
88.   Again, however, within a month of
terminating Ms. Christopher, Defendant hired
new engineers into the Fit Out Group such
that the total number of engineers exceeded
that which existed immediately prior to
Relator Five's termination.

(Doc. 30) (footnote omitted).

Rule 12(f) states that a "court may strike from a pleading
an insufficient defense or any redundant, immaterial,
impertinent, or scandalous matter."  In its Motion, Defendant
asserts this language is "immaterial" (Doc. 33); in replying to
Plaintiffs' response (Doc. 38), it became "impertinent" and
"scandalous" as well (Doc. 42).

In spite of Plaintiffs' opposition to the Motion (Doc. 40),
the Court finds the language immaterial to the Complaint.  It is
recommended that Defendant's Motion to Strike (Doc. 33) be
granted.

CONCLUSION

In Conclusion, for the reasons set out herein, the undersigned recommends that Defendant's Motion to Dismiss (Docs. 34-35) be granted as to claims one and two in the Amended Complaint as Plaintiffs failed to meet the requirements of Fed.R.Civ.P. 9 in pleading them and that the Motion be denied as to claim three as Relators Three and Four have stated a claim for retaliation under the Whistleblower Provision of the False Claims Act.  It is further recommended that Defendant's Motion to Dismiss be denied as to Austal's arguments that the retaliation claims are barred by the statute of limitations and that the entire Amended Complaint should be dismissed for Plaintiff's failure to comply with § 3730(b)(2).  Finally, it is recommended that Defendant's Motion to Strike (Doc. 33) be granted.

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72.4. The parties

should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 10th day of August, 2015.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE